OPINION of the Court, by
Ch. J. Boyle.
This is au appeal from a judgment for the defendant in an action of detinue for two slaves. A bill of exception taken to the refusal of the court below to grant a new trial, presents the whole case, which is briefly this :
Jane Whitledge and James Browning, by articles signed and sealed by. them respectively, agreed, in consideration of their intended marriage, that all the es tate then in her possession, or due to her, should, in case she survived, him, having no issue, return to her or her heirs, and if he should survive her that he should enjoy her estate during his life, and that after his death it should go to her heirs.
They afterwards intermarried, and at her request, and with money belonging to hef estate, he purchased the slaves in dispute, with the express intention that they should belong to her, and be subject to their marriage agreement. He died, leaving her .without issue, and she having since his death made her will, has also departed this life.
The appellants, as his administrators, brought this suit against the defendant, claiming the slaves in question under her will.
Two questions are made in this case : 1st, Whether the tpan iage agreement is valid ? 2d, Whether, if the agreement be valid, the slaves in contest would pass thereby to Mrs. Browning at the death pf her husband l
*38 The first question admits of no doubt. It is in general true that contracts made between husband and wife, when single, become void by their intermarriage. This doctrine is founded upon the unity which in legal contemplation is supposed to exist between husband and wife during coverture. The reason of the rule, therefore, does not apply to those contracts which by their own terms are not to have an operation until after the coverture ceases. It has accordingly been uniformly held that in such cases the contract is not extinguished by the intermarriage — 1 Fonbl. 101-2 — 1 Bacon’s Abr. title baron and feme, letter E, and the cases there cited. The contract here comes clearly within the principle of these cases, and is therefore notwithstanding the intermarriage valid and binding.
The second point is one of more difficulty. With respect to her right after the death of her husband to such part of the estate belonging to her at their intermarriage as remained specifically the same, no doubt can exist. The difficulty arises from the circumstance that the slaves in contest were purchased by the husband after the intermarriage took place. As, however, the purchase was made with the money belonging to her, and with the declared intention that the slaves should be hers under the marriage agreement, her claim to them would seem to have a strong foundation in reason and justice, and unless it be repelled by some technical rule of positive law, ought to be sustained. We are not aware of the existence of such a rule which is applicable to the present case. It is true she was incapable of making a valid contract during coverture, and that therefore her assent to the purchase of the negroes for her benefit, given while the marriage subsisted, would not have been binding upon her ; but her assent given after the coverture ceased by the death of the husband, would be valid; and the devise of the slaves by her will, is a sufficient evidence of such assent. It cannot with propriety be said that the husband could not, by the purchase of the slaves, subject them to the marriage agreement. We know of no rule of lavr which prohibited him from doing so. ,
We are therefore of opinion that the court below acted correctly in refusing to sustain the application for á new trial. — -—Judgment affirmed.