Diokman, J.
Wherever the common law has obtained, the estate of dower has been recognized as an existing institution. It has, however, been so regulated and modified by positive law that it would seem to be solely a creature of the statute. The claim for dower, under consideration, derives its main support from statutory provisions.
Under the act of 1824, “ concerning divorce and alimony ” (29 Ohio L. 431), although it contained no express provision in regard to the assignment of dower when the divorce was obtained by the wife, the doctrine was pronounced in Mansfield v. McIntyre, 10 Ohio, 27, that if the divorce be decreed in consequence of the aggression of the husband, the wife would not be barred of her right of dower, but, upon tbe death of her husband, might enforce thát right in the same manner she might have done, had she continued to live with him uutil the day of his death. A divorced wife was regarded by the court as the widow of her former husband after his decease, and, as such widow, entitled to dower by virtue of the act of January 28, 1823 (1824), “ relating to dower,” which provided that the widow of any person dying shall be endowed ” of all the lands, of which he was seized as an estate of inheritance, at any time during the coverture. But, in Rice v. Lumley, 10 Ohio St. 596, it was the judgment of a majority of the court that dower is only allowed to the widow who was the wife of the person dying at the time of his death ; and that a woman, who, under the act of 1824, concerning divorce, had obtained a divorce a vinculo matrimonii, from her husband for his misconduct, and by subsequent marriage had become the wife of another person, if she survived her first husband, was not his widow at the *653 time of Ms decease, within the terms of the act relating to dower, and was not dowable of his real estate.
The provision “that the widow of any person dying shall be endowed” was retained in the act of March 27, 1858 (55 Ohio L. 24), amending the aforementioned act, relating to dower ; but the act of 1824, concerning divorce, was repealed by the act of 1840 (38 Ohio L. 37). Section five of the act of 1840 specially provides for the wife’s dower, where a divorce is granted for the aggression of the husband, and enacts that, if in such case the wife survive her husband, she shall be entitled to her right of dower in his real estate of which he was seized during the coverture. The case at bar comes within the purview of the “ act concerning divorce and alimony,” passed March 11, 1853 (S & O. 509), the seventh section of which, in all that pertains to the subject of divorce, is in the same words with section five of the act of 1840, which the act of 1853 repealed, and reads as follows :
“ Section VII. That where a divorce shall be granted, by reason of the aggression of the husband, ... if the wife survive her husband, she shall also be entitled to her right of dower in the real estate of her husband, not allowed to her as alimony, of which he was seized at any time during the coverture, and to which she had not relinquished her right of dower; but if the divorce shall arise by reason of the aggression of the wife, she shall be barred of all right of dower in the lands of which her husband shall be seized at the time of the filing of the petition for divorce, or which he may.thereafter acquire, whether there be issue or not.”
In the case of Lamkin v. Knapp, 20 Ohio St. 454, that portion of section five of the act of 1840 came under consideration which provided that “ where a divorce is granted by reason of the aggression of the husband,”- in addition to alimony, “if the wife survive her husbaud, she shall also be entitled to her right of dowerand it was held that, by virtue of this provision, the marriage of the wife, after divorce, to another person, during the life of her first hus *654 band, did not bar her right of dower, and if she survived her first husband she became entitled to be endowed of the real estate of which he was seized during the coverture. Although after divorce she might not be his widow within the terms of the statute relating to dower, yet, if she survived him, the right of dower would be preserved to her by the terms of the statute concerning divorce. The word “wife” was used to designate the person who had been divorced- for the aggression of the husband, and in the event of surviving him dower was to be assigned to her whether she had married or remained unmarried. Survivorship was the only condition annexed by the statute.
In the light of adjudication and statutory interpretation, it is manifest that had Olive Barnhisel been divorced from her husband by a tribunal of this state, by reason of his aggression, she would, upon her surviving him, have been dowable of the one hundred and seventy acres, of land of which the defendant in error claims the ownership, notwithstanding her intermarriage with McGill after the divorce and during the life-time of her first husband. This right would have inured to her, not by virtue of the act relating to dower, which endows “ the widow of any person dying,” but under the provisions of the act concerning divorce.
It is contended, however, that the divorce of Olive Barnhisel was not granted by reason of the aggression of her husband within the meaning of the act of March 11? 1853 : first, because his misconduct was not equivalent to the aggression contemplated by that statute; and second, because that statute was applicable only to divorces decreed by our own courts
Among the causes of divorce declared by o.ur own statute were extreme cruelty and habitual drunkenness for three years; and during all the time of the proceedings for divorce instituted by Olive Barnhisel, it was provided by the statutes of California that divorces might be granted in that state for extreme cruelty, and habitual intemperance which had continued one year. It is shown in the *655 finding of the facts by the district court that in the divorce proceedings in California, Olive Barnhisel .alleged in her complaint that in 1855, on account of ill-treatment by her husband, she had been compelled to leave him, and had never since lived or cohabited with him. She furthermore alleged that continuously, for more than three years next preceding, he had been habitually intemperate, and by reason of such intemperance had been all that time and then was, incapable of attending to his ordinary affairs or business. The cause having been referred to a commis-sioner, to take the proofs as to the matters and things set out in the complaint, and the commissioner having made his report, the court found among other facts that Olive Barnhisel, by reason of her husband’s intemperance and cruel treatment, had been compelled to leave him, and that for more than two years immediately preceding the filing of the complaint in the case, he had been guilty of habitual intemperance. And the final decree of divorce was pro.nounced, as therein set forth, upon its appearing to the court that all the material allegations of the complaint had been sustained and established by testimony free from all legal exceptions as to its competency, admissibility, or sufficiency. It is presumable that our district court based its finding of facts in reference to the divorce upon the record and judicial proceedings of the court in California, 'as duly authenticated in accordance with the act of congress. The decree of divorce was rendered for the cause of cruelty, and habitual intemperance for more than two years. Eor aught that appears the habitual intemperance had continued for three years and ■ more. One of the material allegations of the complaint being that Jacob Barnhisel continuously for more than three years had been habitually intemperate, and the court having found all such allegations to have been sustained, we think that his cruelty and habitual intemperance constituted an aggression, within the meaning of the act of 1853, adequate to entitle his divorced wife to dower in his lands.
But the question arises whether the divorces referred to in *656 section seven of the act of 1853 include those that are decreed by courts of states other than our own, and whether the divorce granted in California to Olive Barnhisel should have availed her in maintaining her claim for dower in the real estate situated in Ohio. Jacob Barnhisel and wife, at the time they were divorced, were and had been domiciled in California for over eighteen years. It was there that the dereliction of duty and acts of aggression occurred for which, the divorce was granted to his wife. The case was not, therefore, one of removal from this state to evade the operation of our own divorce laws. The court pronouncing the decree of divorcehad acquired unquestioned jurisdiction of both parties and of the subject-matter of the action. Indeed, no tribunal in any other state could, at the time, have properly taken cognizance of the action. It is a rule dictated by reason and justice, and grounded in public policy and convenience, that the courts of a country where both parties are domiciled may adjudicate in regard to the validity, continuance, or dissolution of the marriage relation. And it is now firmly held that where parties are actually domiciled in the country, and a sentence of divorce is pronounced between them by a competent tribunal, having jurisdiction over the case, the sentence is valid and ought to be held every-where a complete dissolution of the marriage, in whatever country it may have been originally celebrated. Story Confl. Laws, § 597.. It is, therefore, the settled doctrine, that a judgment of divorce granted by the coui’ts of one state, and valid there by the local laws of such state, is valid in every other state in the Union, if the respondent was duly and actually served with process, or appeared voluntarily and submitted to the jurisdiction. Cheever v. Wilson, 9 Wall. 108.
The constitution of the United States requires that “ full faith and credit shall be given in each state to the public acts, records, and judicial proceedings in every other state.” And, by act of congress, such records and judicial proceedings, when duly authenticated, are to have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the *657 state from whence such records are or shall be taken. It is well settled that these provisions apply to judicial proceedings in cases of divorce as well as in other causes.
A judgment in an action for divorce is in the nature of a judgment in rem. It determines the question of marriage relations, or of personal status, as against all the world, and is, therefore, conclusive, not only upon the parties litigating in the cause, but upon strangers. 1 Greenlf. Ev., § 525; 1 Stark. Ev. 288. Such a judgment is as conclusive upon Deming, the defendant in error, as it would have been upon Jacob Barnhisel, if his wife, after the divorce, had commenced proceedings against him in this state for alimony.
It is said in Cox v. Cox, 19 Ohio St. 511, that the principle, upon which rests the validity of decrees of divorce granted by the tribunals of other states, does not require that they should be allowed 'to operate in the foreign jurisdiction beyond the dissolution of the marriage. But it may with reason be also said that justice between the parties does not require that such divorces shall, in all cases, have no effect upon property except in the forum where they are decreed. While it is a principle of general recognition that real or immovable property ought to be left to be adjudged by the law of the place where the property is situated, as not within the reach of extra-territorial law, it is not inconsistent with this principle to accord to a foreign divorce the same effect upon real property located beyond the forum of the'decree, that is given to divorces of the same class decreed within the jurisdiction where such property is situated. . In considering the incidents to a foreign divorce Judge Story says: “In respect to real or immovable property, the same effects would in general be attributed to such divorce-as would ordinarily belong to. a divorce of the same sort by the lex loci rei sitce. If a dissolution of the marriage would there be consequent upon such a divorce, and would there extinguish the right of dower . . . according to such local law, then the like effects would be attributed to the foreign divorce which *658 worked a like dissolution of the marriage.” CoiifL. Laws, § 230e. And so, upon the same principle, if a right of dower, according to such local law, would accrue upon the granting of a divorce by a local tribunal, the like effect would follow a foreign divorce of the same sort decreed by a competent tribunal. The foreign divorce would not be recognized as exerting an extra-territorial force, proprio vigore, but would owe its effect rather to its conformity to the law of the place where the real property might be situated. A divorce granted to the wife by reason of the aggression of her husband by a competent court in California — both parties being there domiciled in good faith — would thus, in a claim of dower in Ohio lands, have a like effect with a divorce for an aggression of the same sort decreed by oue of our own courts.
Our attention is called to the case of Mansfield v. McIntyre, supra, au application for dower after divorce granted to the petitioner’s husband. The act of 1824, concerning divorce and alimony, provided that when the cause of divorce arose from the aggression of the wife she should be barred of her right of dower. John Mansfield, the husband of the plaintiff, procured an ex parte divorce from her in Kentucky, because of her continued absence from him for a long period of time. What was the cause of this separation is not shown, but, according to the statement of facts in the case, it was probably by mutual agreement of the parties. The court held that the decree of divorce pronounced in Kentucky did not bar the plaintiff’s right of dower in lands lying in Ohio. It is not shown that the cause for granting the divorce in Kentucky was such an aggression of the wife as would have been sufficient, if committed in this state, to bar her dower within the meaning of our statute. There seems to have been a defective or ambiguous record of the proceedings in divorce in Ken-, tueky, and Hitchcock, J., in delivering the opinion, said: “ Ey our law, when a divorce is decreed, both parties are absolved from the obligations of the marriage contract. In *659 looking into the decree in the present ease, however, I find that, although John Mansfield is divorced from his wife, she is not, in terms, released from any of her obligations to him. For aught that appears in the decree she still continued to be his wife.” Under such circumstances, the court could not have been expected to make the decree pronounced in Kentucky a basis for refusing the application for dower. But these circumstances find no counterpart in the ease under consideration; and the Kentucky divorce for the alleged aggression of the wife can not stand on the same plane with the California divorce for the aggression of the husband.
In construing the words in section seven of the act of 1853, “ where a divorce shall be granted by reason of the aggression of the husband,” it will be observed that the language of the statute is not limited to divorces decreed in Ohio, but is general, and may embrace divorces decreed in any other state. In the case of Harding v. Alden, 9 Greenlf. (Me.), 140, a husband deserted his wife in the state of Maine and went into North Carolina, and she removed into Rhode Island. Afterward he committed adultery in North Carolina, for which cause he was divorced from the bonds of matrimony by the supreme judicial court of Rhode Island, he having been personally cited to appear, but refusing so to do. It was held that the divorce was valid; and that the wife was entitled to dower in the lands held by the husband in the state of Maine during the coverture, in the same manner as if they had both continued to reside in Maine, and the divorce had been there decreed. The court say : “ If the divorce decreed in Rhode Island is valid here, the remaining question is, whether the wife was thereupon entitled to dower in any estate of inheritance of which the husband was seized during the coverture. The statute allows it in the lands of the husband where a divorce is decreed for the cause of adultery committed by the husband, to be assigned in the same manner as if he were dead. The language is general, and is not limited to divorces decreed,within the state.” The doctrine of this *660 case in reference to dower is, we think, in harmony with onr own statute. We see nothing in the seventh section of the statute incompatible with extending its provisions to the case of a wife divorced from her husband in another state,' and nothing to indicate that it was the intention of the legislature to restrict its provisions to divorces granted only by our own tribunals. It was not, we think, the legislative intent, and it would do violence to the spirit of the statute, if the husband could remove with his wife to another state, leaving the bulk of.his property behind, and after there becoming domiciled could, by maltreatment or misconduct, force his wife to obtain a divorce, and thereby deprive her of her dower in his real estate in Ohio; Such a construction of the statute, as would enable the husband thus to act in fraud of the rights of the wife, could not have entered into the legislative mind.
By virtue of coverture and seizin of the inheritance in her husb'and, Olive Barnhisel acquired inchoate dower in his real estate — a valuable vested right or interest in his lands — which, though contingent, became consummate upon her surviving him, and entitled her to an assignment of dower in such lands. Under the statute, her right of dower might have been barred by jointure, or by leaving her husband and dwelling with another man in a state of adultery; or it might have been extinguished by deed, or in some other statutory mode, but it could not have been defeated by any separate act of the husband during coverture. The divorce by reason of the aggressive acts of her husband, decreed by a competent tribunal in California, did not work a forfeiture of her right of dower; and no act of her own, before or after the decree of divorce, is disclosed in the record, that would cause a'forfeiture or divestiture of her dower in the real estate of. which Jacob Barnhisel was seized during the coverture.
During the pendency of the action in the district court, Olive McGill having died, her death was suggested, and her administrator, F. D. McBain, was made party plaintiff; and the question arose, whether such administrator was entitled *661 to relief in the action. Before the passage of the act of February 12,1863 (60 Ohio L. 10) proceedings by the widow for an assignment of dower were abated by For death, and in such case, there could be no revivor. But under section 5711 of the Revised Statutes, as under the act of 1863, in the event of the widow’s death before the assignment of her dower or before entry of the final judgment, the action may be revived in the name of her executor or administrator; and a decree may be rendered for a sum equal to one-third of the rental value of the real estate, of which she would have been dowable had she lived, from the time of filing her petition until her death, after deducting one-third of the necessary expenses.
In conformity with these views, we think a judgment should be entered for the plaintiff.

Judgment accordingly.