[No. 2281]

## ROMAIN BLAKESLEE, RESPONDENT, *v.* LAURA E. BLAKESLEE, APPELLANT.

[168 Pac. 950]

1. MARRIAGE—RIGHT OF STATE TO DEAL WITH STATUS.
    States have the right to deal with the marriage status of their own citizens.

2. DIVORCE—JURISDICTION OF DISTRICT COURT—ACTS COMMITTED IN ILLINOIS—STATUTE.
    Under Rev. Laws, 5838, providing that divorce may be obtained by complaint under oath to the district court of the county in which the cause shall have accrued, or in which defendant shall reside or be found, or in which plaintiff shall reside, if the latter be either the county in which the parties last cohabited, or in which plaintiff shall have resided six months before suit, for wilful desertion for a year, or for extreme cruelty, a district court had jurisdiction to grant divorce for extreme cruelty and desertion to a husband resident in the county for a year, though the acts complained of all occurred in another state, under whose statutes there was no cause of action for divorce on those grounds, since the law of the forum controls; it being the legislative intent that the district court have jurisdiction to determine the marriage status of parties whose residential qualifications meet the requirements of the statute, regardless of where the cause of action may have arisen; marriage, though a civil contract, constituting an exception to the rule of *lex loci contractus*.

3. DIVORCE—RESIDENCE OF PLAINTIFF—QUESTION OF FACT.
    In a husband's divorce suit, the question of his residence was one of fact to be determined by the trial court.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran*, Judge.

Action for divorce by Romain Blakeslee against Laura E. Blakeslee. From a judgment for plaintiff, defendant appeals. **Judgment affirmed.**

*Sweeney & Morehouse,* for Appellant:

The judgment of the lower court is not sustained by the evidence in granting a decree for extreme cruelty, because the parties were never domiciled in Nevada, and no act of any kind ever occurred in Nevada; hence there was no extreme cruelty in Nevada. The acts complained of all occurred in Illinois, and under the laws of that state, offered and admitted in evidence, there was no cause of action for divorce in that jurisdiction; and there being no cause of action in Illinois, and none in Nevada, the decree is wrong. This is not a case where, if there were no law in Illinois upon the subject, our court could act upon the status of the parties under the law of the forum. It is a case where the cause of action is provided for in Illinois, so that the status of the parties under the laws of that state becomes the subject of investigation. (*Shreck* v. *Shreck,* 5 Am. Rep. 251.) Many cases hold that the place where the *delict* arose is immaterial, but they are all cases where a complete and perfect cause of action arose elsewhere. (*Hubbell* v. *Hubbell,* 62 Am. Dec. 702; *Tolen* v. *Tolen,* 21 Am. Dec. 742; *Harding* v. *Alden,* 23 Am. Dec. 549; *Harrison* v. *Harrison,* 19 Ala. 499; *Thompson* v. *State,* 25 Ala. 12; *Standridge* v. *Standridge,* 31 Ga. 223; *Harteau* v. *Harteau,* 25 Am. Dec. 372.)

To dissolve the marriage status there must be a lawful ground for dissolution. While it is true that a transitory action follows the person and may be sued on anywhere the person is found, there must be a legal cause of action. Divorce differs from other transitory actions only in the fact that the plaintiff may sue the defendant by publication of summons as against a non-resident. Status means the legal and social relation of husband and wife. While courts distinguish a divorce as *quasi in rem,* and speak of marriage as the relation of the parties, as a jurisdictional question for the purpose of process the status alone will not permit a decree of divorce; there must be a ground for divorce. (*Barney* v. *Tourtelotte,* 138 Mass. 106.)

The evidence is insufficient to sustain the decree upon

the ground of desertion, either under the law of Nevada or Illinois, because the desertion, if any, had not continued two years in Illinois nor one year in Nevada before the commencement of the action.   To constitute desertion in Nevada there must be the fixed intent to desert, and such intent is one of the important elements of desertion.   (*Plymate* v. *Plymate,* 180 S. W. 29; Nelson, Div. and Sep., sec. 51.)   To constitute desertion there must be a matrimonial domicile to leave and abandon. (Rev. Laws, 5838.)   "A wife's mere absence from her husband, though she wrongfully separated herself from him, is not in itself proof of a wilful intent on her part to abandon him, sufficient to entitle him to a divorce unless he in good faith invited her to return or made known his willingness to receive her." (*Ojserkie* v. *Ojserkie,* 62 Atl. 113; B*ridge* v. *Bridge,* 93 Atl. 690; *Wood* v. *Wood,* 53 Atl. 51; *Vosberg* v. *Vosberg,* 68 Pac. 697.)   If there was desertion, it was on the part of the plaintiff.   "A husband is presumed to intend to desert where he goes away without notifying the wife where he is going, and makes no attempt to notify her so as to enable her to follow him."   (*McLain* v. *Janin,* 2 South. 745.)

*Frank D. King,* for Respondent:

What constitutes desertion is generally prescribed by the statutes of the several states.   The statute of Nevada requires that desertion must be for one year in order to constitute ground for divorce.   It does not state, however, that the year's desertion must have taken place in Nevada.   "Desertion is the fact solely of his separation from her for the requisite length of time, with the continuing intention on his part during such time not to perform his matrimonial obligations."   (*Beach* v. *Beach,* 27 Tex. 390; *Colburn* v. *Colburn,* 70 Mich. 647.)

By the Court, McCARRAN, C. J.:

This was an action for divorce.   The complaint was based on two causes of action—extreme cruelty, and desertion.

The desertion constituting the basis of the second cause of action is alleged to have taken place in the city of Chicago, State of Illinois. It appears from the record that appellant and respondent had formerly lived together in the city of Chicago; that on or about May 1, 1914, respondent left that city and came west, later taking up his residence in the city of Reno, where he had resided for a period of about one year prior to the commencement of this action.

Appellant here bases her claim for reversal of the judgment of the trial court in which a divorce was decreed to respondent upon three contentions expressed in appellant's brief as follows:

"(1) That the judgment of the court is not sustained by the evidence in granting a decree for extreme cruelty, because the parties were never domiciled in Nevada, and no act of any kind ever occurred in Nevada, so that there was no extreme cruelty in Nevada, and the acts complained of all occurred in Illinois, and under the laws of Illinois offered and admitted in evidence there was no cause of action for divorce in the State of Illinois. There being no cause of action in Illinois and none in Nevada, the decree is wrong.

"(2) The evidence is insufficient to sustain the degree upon the ground of desertion either under the law of Nevada or Illinois, because the desertion, if any, had not continued two years in Illinois or one year in Nevada before the commencement of this action.

"(3) That the evidence fails to prove the second cause of action."

The argument of counsel for appellant is interesting, but academic. It fails to take cognizance of the modern theory which the law has crystallized into a concrete form to give more stable, and, if possible, uniform, existence to the marriage relation.

Christianity struck a standard for monogamous marriages; the relationship thus established, whether recognized as sacramental or as contractual, has been the subject of thought by theologians, academicians, philosophers, and jurists.

Viewed either from the standpoint of the ecclesiastical domain, where it is primarily recognized as sacramental in nature, or from that of the civil or common law, where it takes the form of contract only, this relationship is regarded as the nucleus of modern civilization, being that around which groups the family, the basis of human existence. Thus courts and lawgivers have dealt with the question with a view to uniformity of rule and harmony of consideration.

Under our forms of government here in the United States, with the several jurisdictions legislating on the subject, it is not surprising that some confusion is manifest; but some cardinal points have been so well identified that the mariner on the sea of conflict may find the true course.

Appellant's contention as to the only question involved in this appeal finds some support in English jurisdictions. This is especially true in the earlier cases (*Lolley's Case*, 1812–13; *McCarthy* v. *De Caix*, 2 Russell & Mylne, 615), but it is interesting to note in a later case, heard and determined by the House of Lords on appeal from the Court of Sessions of Scotland (*Warrender* v. *Warrender*, 9 Bligh's New Rep. 89), the whole question is gone into at length, and there Lord Brougham, speaking for that august body, held to the effect that, although a marriage was solemnized in England and the parties domiciled there, and after separation the husband took up his residence in Scotland, and the wife resided in France, and the acts constituting the ground of complaint were committed in the latter country by the wife, who had never resided in Scotland, yet the Court of Sessions of Scotland had jurisdiction to pronounce sentence of divorce.

In another case decided by the English courts (*Brodie* v. *Brodie*, 2 Swabey & Tristram's Rep. 259) a Scotchman by birth, having married an English woman, lived in Tasmania and in Melbourne, Australia. After separation he went to Scotland, remained there for a number of years, and later took up his residence in England, during all of which time the wife remained in

Sydney, Australia, where she was guilty of acts of adultery. The husband instituted proceedings for divorce in the English courts. The court, after determining from the proof offered that petitioner was a bona-fide resident in England, held that he was entitled to a decree of divorce upon grounds of adultery, although the acts were committed by the wife in Australia, and notwithstanding the fact that the latter had never been a resident of England. But in *Shaw v. Gould*, L. R. 3, H. L. 55, the doctrine is again announced by the English court that a foreign tribunal has no authority to pronounce a decree of divorce where the marriage was consummated in England between English subjects, unless the parties are at the time of the rendition of the decree bona fide domiciled in the country where that tribunal had jurisdiction; and in the case of *Lesuer v. Lesuer*, L. R. 1, Prob. Div. 139, the English court denied that the domicile of one party within the territory was sufficient to give jurisdiction.

The courts of New York have held in most instances to the same effect, but primarily on the theory that an action for divorce was one *in personam* rather than *in rem.*

The almost universal holding by the courts of the United States is that, inasmuch as a divorce proceeding is one intended to affect the status of the parties, it is therefore essentially an action *in rem,* and that the status is the *res.* In conformity with this doctrine, the state courts in nearly all instances have held that a decree of divorce, whether granted in a foreign country or in a sister state by a court having lawful jurisdiction of the case, is, in the absence of fraud, valid and binding everywhere, provided the applicant was bona fide domiciled within the territorial jurisdiction of the court rendering the decree. This, too, in cases where the other party was a nonresident and notification was made only by constructive service. (*Roth v. Roth*, 104 Ill. 35, 44 Am. Rep. 81; *Tolen v. Tolen*, 2 Blackf. 407, 21 Am. Dec. 742; *Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565.)

The reason for the rule and doctrine last referred to is so well set forth by the language of Mr. Brown in his Commentaries on the Jurisdiction of Courts (2d ed.) p. 289, that we quote approvingly. Speaking of the marriage status, he says:

"In the relation in which it arises, it is purely transitory, yet follows as a condition attached to the person; as, when a man and woman are married, each carries that status, so that a court having jurisdiction over one may dissolve it as to both. It arises more commonly in suits for divorce, and it may now be said that, where one of the parties becomes a resident of a state, or is domiciled therein, he or she may apply to the court of the state having jurisdiction over that party as a citizen thereof, and the court may dissolve that relation or status, although the other spouse has never been within the jurisdiction of the state, and owes no allegiance to it. It therefore is necessarily held to be a thing, within the meaning of the law, that is attached to citizenship, or a domiciled person in the state, and the jurisdiction grows out of that thing."

The author, in support of this last-quoted assertion, cites the case of *Cheeley* v. *Clayton*, 110 U. S. 702, 4 Sup. Ct. 328, 28 L. Ed. 298, wherein Mr. Justice Gray, speaking for the Supreme Court of the United States, expressed the sanction of that tribunal to the doctrine that, where a wife is living apart from her husband, his domicile being her domicile in law, a divorce obtained by him in the state of his domicile, after reasonable notice to her either by personal service or by publication in accordance with the laws of the state of his domicile, is valid, although she never in fact resided in that state.

In the case of *Cheever* v. *Wilson*, 76 U. S. 108, 19 L. Ed. 604, the Supreme Court of the United States settled the question here under consideration by declaring that a wife may acquire a domicile different from her husband's whenever it is necessary or proper that she should have such a domicile, and in such she may institute proceedings for divorce, though it be neither

her husband's domicile nor the domicile of the parties at the time of the marriage nor at the time of the offense. There the court said:

"The place of the marriage, of the offense, and the domicile of the husband are of no consequence."

What is regarded as a leading case in the United States on the question here raised by appellant emanates from the Supreme Court of Illinois (*Dunham* v. *Dunham*, 162 Ill. 589, 44 N. E. 841, 35 L. R. A. 70), where Mr. Justice Carter, in delivering the opinion of the court, wrote exhaustively on the subject, and, after reviewing the question here presented in the light of the consideration given thereto by nearly all of the text-writers and by courts in the several jurisdictions, held in conformity with the rule as laid down by the Supreme Court of the United States in the case of *Cheever* v.*Wilson, supra.*

In 9 R. C. L., at p. 397, the commentator has cited most eminent authority in support of what we find to be the prevailing rule, and which is there stated thus:

"The general view, however, seems to be that the fact that the cause for divorce arises in another state where the parties were at the time domiciled is no insuperable bar to the jurisdiction of the courts of another state to grant a divorce, if the complaining spouse acquires a bona fide domicile or residence in the state of the forum."

Continuing, it said:

"It is the prevailing view that either spouse may acquire such residence or domicile within the state as will enable him or her to resort to the courts for divorce, even though the defending spouse had never been a resident of the state."

1. It is a recognized principle of law that states have the right to deal with the marriage status of their own citizens.

Our statute (section 5838) provides:

"Divorce from the bonds of matrimony may be obtained, by complaint under oath, to the district court of the county in which the cause therefor shall have

accrued, or in which the defendant shall reside or be found, or in which the plaintiff shall reside, if the latter be either the county in which the parties last cohabited, or in which the plaintiff shall have resided six months before the suit be brought, for the following causes: * * *

"Third—Wilful desertion, at any time, of either party by the other, for the period of one year. * * *

"Sixth—Extreme cruelty in either party. * * * * "

2. Under this provision it was competent for the district court to entertain the complaint of respondent, he having alleged his residence for the required period of time and having prayed for the decree upon two of the causes known to our statute, namely, desertion and extreme cruelty.

It will be noted that this statute makes no provision limiting the court to cases where the cause of action arises within the state. Manifestly it was the legislative intent that the district court in this state should have jurisdiction to determine the marriage status of parties whose residential qualifications met the requirements as laid out in the statute, regardless of where the cause of action may have arisen.

3. The question of the residence of the plaintiff, the respondent here, was one of fact to be determined by the trial court. (*Fleming* v. *Fleming,* 36 Nev. 135, 134 Pac. 445; *Merritt* v. *Merritt,* 160 Pac. 22; *Presson* v. *Presson,* 38 Nev. 203, 147 Pac. 1081.)

The trial court from the facts presented determined that the respondent, plaintiff in that court, was a bona fide resident within its jurisdiction. This being true, it had the right to determine his marital status, and this, too, even though the grounds upon which the respondent sought divorce consisted of acts committed by appellant when each was living in a foreign jurisdiction.

Under the authorities cited, it is the law of the forum that controls; and the fact that extreme cruelty, as it has been interpreted by our courts and as known to our laws, is not the same as that recognized by the laws

of Illinois, the place of abode of the respondent, does not take from the jurisdiction of our district court to grant a decree of divorce under such conditions. Though marriage is a civil contract, it constitutes an exception to the rule of *lex loci contractus,* and by reason of the fact that the status is the thing to be determined, the jurisdiction ·in which the party complaining has established his residence pursuant to the laws thereof has the power to determine that status.

"The contract of marriage," said the Supreme Court of Texas, "being *sui generis,* may be regarded as an exception to the universality of the rule; as also such contracts as are against the interests of morality and religion, which each independent municipal authority must judge of and determine according to its convictions of what will best promote its own social happiness and welfare." (*Shreck* v. *Shreck,* 3 Tex. 578, 5 Am. Rep. 252.)

To the same effect are the cases of *Tolen* v. *Tolen, supra,* and *Hubbell* v. *Hubbell,* 3 Wis. 662, 62 Am. Dec. 702.

On the question of residence and as to whether the facts supported the good faith of the respondent in his residence within the jurisdiction, there is, in our judgment, sufficient in the record to support the conclusion of the trial court in finding affirmatively in this respect.

The judgment of the trial court is affirmed.

It is so ordered.