## GEEKIE v. KIRBY CARPENTER COMPANY.

1. Under section 5 of chapter 138 of the General Laws of Wisconsin, of 1861, providing that "no action shall be commenced by the former owner or owners of any lands, or by any person claiming under him or them, to recover possession of land which has been sold and conveyed by deed for non-payment of taxes, or to avoid such deed, unless such action shall be commenced within three years next after the recording of such deed," land is to be regarded as having been sold for non-payment of taxes, although the sum to raise which it was sold included five cents for a United States revenue stamp, to be put, and which was put, on the certificate issued to the purchaser on the sale.

2. A deed on a tax sale recites that " S. A. Coleman, assignee of Oconto County," has deposited certificates of sale showing that five parcels, each of which sold for so much, were sold "to the said Oconto County, and by its treasurer assigned to S. A. Coleman " for so much "in the whole," the total being the sum of the five several sums.  The statute, c. 50, sect. 22, of the General Laws of Wisconsin, of 1859, prescribes a form of deed, and provides that it shall be "substantially " in that or "other equivalent form," showing that the land was sold for a sum named "in the whole."  *Held*, that the deed is in substantial compliance with the form prescribed.

3. A sheriff having possession of property under a writ of attachment is not bound by the judgment in a replevin suit to which he was not a party, and in which he was not served with process, and did not appear, and which he did not defend, although his under sheriff, as an individual, was a party to the suit.

4. *Quære*, Are the waters of the Menominee River, which is the boundary between Michigan and Wisconsin, within the concurrent jurisdiction of both Wisconsin and Michigan.

5. Although there was no general verdict in this case, and no special verdict in any form known to the common law, and no waiver in writing of a jury trial, and no such finding of the court below upon the facts as is provided for by sect. 649 of the Revised Statutes, this court, on a written stipulation filed here by the parties, agreeing upon the facts, reviewed the case on a writ of error, reversed a judgment below for the defendant, and directed a judgment for the plaintiff.

ERROR to the Circuit Court of the United States for the Eastern District of Wisconsin.

The facts are stated in the opinion of the court.

Mr. *Samuel D. Hastings, Jr.*, for the plaintiff in error.

Mr. *Luther S. Dixon* and Mr. *B. J. Brown* for the defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This suit was brought in a court of the State of Wisconsin, by Peter W. Geekie, sheriff of Oconto County, Wisconsin, and William Klass, citizens of Wisconsin, against the Kirby Carpenter Company, an Illinois corporation, and was removed into the Circuit Court of the United States for the Eastern District of Wisconsin, before answer. The cause of action set forth in the compaint was, that the plaintiff Klass was the owner of certain saw-logs lying in the waters of the Menominee River, in Oconto County, Wisconsin; that in April, 1876, the plaintiff Geekie, as such sheriff, levied on and attached said logs under a writ of attachment issued against said Klass by the Circuit Court of said county; that the defendant, by its employés, took, in Wisconsin, a large quantity of saw-logs from the sheriff, and converted them to its own use, to the value of $8,500; and that the sheriff expended $940 in endeavoring to safely keep the logs so wrongfully taken, and as increased expense in keeping what logs the defendant did not succeed in taking. The claim made is for treble damages, with interest.

The answer sets up that the logs were not the property of Klass, but were the property of the defendant; that whatever the defendant did in regard to the logs was done under a writ of replevin issued in a suit brought by it, as plaintiff, in the Circuit Court for Menominee County, Michigan, to the sheriff of that county, commanding him to take said logs and deliver them to it; and that said sheriff took said logs into his custody under said writ in said county of Menominee, in the State of Michigan, and delivered them to said company.

The case was tried before a jury. The record states that the jury "rendered a special verdict in answer to the questions propounded by the court, said questions and the answers of the jury thereto being as follows." There is no other or further special verdict than the eight questions and answers which

then follow, and there is no general verdict for either party. Afterwards the plaintiffs moved the court "upon the special verdict" and on "the records and evidence in said cause" "for judgment in their favor for $6,791.56, with interest at the rate of seven per cent per annum from April 24th, 1876, and costs." The defendant also moved for judgment in its favor on the "special verdict," "and because in law the plaintiffs established no cause of action." The court ordered judgment in favor of the defendant and overruled the motion of the plaintiffs for judgment in their favor. Judgment was rendered for the defendant, against the plaintiffs, for $186.02, costs. This writ of error is brought by the plaintiffs to review and reverse this judgment.

At the trial, as appears by the bill of exceptions, the plaintiffs, to show title in Klass to the logs, offered in evidence a tax deed from the State of Wisconsin and Oconto County to one S. A. Coleman, dated and acknowledged April 27, 1867, and the certificate of its record indorsed on it, showing that it was recorded in the office of the register of deeds for said county, on the same day. The defendant objected to the reception of the deed in evidence (1) because it was not in the form prescribed by statute; (2) because it was not executed and acknowledged as required by law; (3) because it was void upon its face. The court reserved its rulings on said objections, and received said deed and certificate in evidence subject to said objections. Like objections and a like ruling were made in respect to a certified copy of the record of said deed, showing the date of its recording. The deed covered $79\frac{58}{100}$ acres of land, in section 13, in town 33, of range 22, and 120 acres in section 14, in town 33, of range 22, being five several tracts, all in Oconto County. The sale was for $12.20, which was the amount of the taxes and costs of sale. The plaintiffs then proved that Klass purchased from Coleman the timber standing on the premises described in the deed; that all the logs in controversy were cut by Klass from the premises during the winter of 1875 and 1876, and put into the river; that the premises remained vacant and unoccupied during the whole of the three years next after the recording of the deed; that the logs were held by Geekie, as sheriff, under a regular and

valid attachment and levy; and that the company claimed to own the logs and sought to take them from the custody of Geekie.  After the plaintiffs had rested, the defendant offered to show, by certified copies of the records from Oconto County, that the county treasurer of that county, in making the sale of the lands on which the said tax deed to Coleman was based, added to the amount of all legal taxes and charges for which each of said tracts was liable to be sold the sum of five cents to pay for a United States revenue stamp to be placed on the certificate issued to the purchaser on such sale; that said illegal excess of five cents was included in the amount for which each one of said tracts was sold; and that a five-cent United States internal revenue stamp was affixed to each one of said certificates of sale.  The plaintiffs objected to the reception of said evidence, as incompetent and immaterial, because said tax deed was regular and valid on its face, and had been recorded more than three years before the commencement of the action and the cutting of the timber.  The court reserved its ruling on said objection until the close of the case, and received said testimony subject to said objection.  It was then admitted by the plaintiffs that the facts relative to said sale were as the defendant offered to show them to be, but not waiving their objection to said evidence, or consenting to its being received. The defendant then gave evidence showing that it owned in fee-simple, at the time the tax deed to Coleman was executed and recorded, the premises from which said timber was cut. After the close of the evidence the questions to be answered by the jury were submitted to them by the court, and they were answered by the jury.  The bill of exceptions states as follows: "Both said plaintiffs and said defendant filed motions for judgment on the pleadings, records, and evidence in said cause, and, upon the argument of said counter-motions and said objections to testimony reserved, the court overruled said defendant's objections to the admissibility of said tax deed in evidence, and said plaintiffs' objection to said defendant's testimony showing the illegal excess of five cents in the amount for which each of said tracts of land was sold by said county treasurer, and overruled said plaintiffs' motion for judgment, and ordered judgment for said defendant; to each of which

said rulings against said plaintiffs said plaintiffs then and there duly excepted."

To obviate any objection that this court could not review the judgment in this case because there was no general verdict of the jury, and no special verdict in any form known to the common law, and no waiver in writing of a jury trial, and no such finding by the court below upon the facts as is provided for by sect. 649 of the Revised Statutes, the parties have filed in this court a written stipulation, agreeing "that the facts appearing from the special verdict and stated by the bill of exceptions to have been proved, shall be taken and considered as the facts in this case for all purposes, and as fully as if they had been specifically found by the Circuit Court;" and "that the Circuit Court submitted certain questions to the jury by agreement of the parties, and that the other facts were to be found and stated as shown by the bill of exceptions, and that upon the whole case, as thus shown, judgment was to be pronounced by the court below, as they should determine the law."

The ground upon which the Circuit Court overruled the objection of the plaintiffs to the testimony on the part of the defendant to show the illegal excess of five cents in the amount for which each of the tracts of land was sold was, that, in being sold to raise the five cents, the land was sold for that which was not a tax; that the amount assessed against the land for a tax was less than the amount for which it was sold; that, although a tax was included in that amount, there was also included in it that for which the land could not be sold; and that this fact deprived the officer of the power to sell and made the tax deed void.

The statute of Wisconsin applicable to this subject is found in chapter 138 of the General Laws of 1861, sects. 5 and 6: —

" SECT. 5. No action shall be commenced by the former owner or owners of any lands, or by any person claiming under him or them, to recover possession of land which has been sold and conveyed by deed for non-payment of taxes, or to avoid such deed, unless such action shall be commenced within three years next after the recording of such deed.

" SECT. 6. The limitation for bringing actions prescribed in the

last preceding section shall not apply . . . where the taxes for the non-payment of which the land was sold and the tax-deed executed were paid prior to the sale, or where the land was redeemed from the operations of such sale, as provided by law, nor where the land was not liable to taxation."

The sole question presented under these provisions is, whether the land in this case can be said not to have been sold for non-payment of taxes, because in the $12.20 for which it was sold was included twenty-five cents for the five stamps, in addition to $11.95 for taxes proper. It is admitted that the land could not properly be sold to raise the five cents as a tax, and that, if the question had been raised on behalf of the original owner of the land in a suit commenced within three years next after the recording of the deed on the sale, he could have had relief against the sale; but it is contended for the plaintiffs in error that the lapse of the three years prevented the questioning of the validity of the deed because of the irregularity complained of. We are of opinion that the Circuit Court erred in its construction of the statute. The exceptions in sect. 6 do not apply to this case, and the land was sold for non-payment of taxes, although an improper item was included in the amount for which the sale was had. It matters not whether such item was five cents for a revenue stamp, or an illegal excess for fees, or any other illegal excess. The statute applies whenever there has been an actual attempt, however defective in detail, to carry out a proper exercise of the taxing power. As against the grantee in the tax deed the statute puts at rest all objections raised, after the time specified, against the validity of the tax proceeding, from and including the assessment of the land to and including the execution of the deed. If the deed is valid on its face, and purports to convey the land on a sale for the non-payment of taxes, it is, during the three years, *prima facie* evidence of the regularity of the tax proceeding, and, after the statute has run in favor of the grantee, the deed becomes conclusive to the same extent. The general authority of the taxing officers and the liability of the land to taxation having existed, there was no want of authority to put the taxing power in motion. That being so, the lapse of time establishes conclusively the validity of the tax and of the sale, as

against the irregularity in question. There having been jurisdiction, all error was conclusively barred by the statute. This construction is that held by the Supreme Court of Wisconsin in regard to this statute, in *Oconto County* v. *Jerrard*, 46 Wis. 317, and *Milledge* v. *Coleman*, 47 id. 184. It is said, and correctly, in the latter case, that that is the view which has been uniformly taken of that statute by that court, and that to adopt a contrary view would disturb numerous titles. Such construction was, therefore, always a rule of property, in respect to land, in Wisconsin, and is one which this court will follow. *Suydam* v. *Williamson*, 24 How. 427. In *Milledge* v. *Coleman*, the illegality alleged was the including of five cents for a United States revenue stamp in the amount for which the land was sold. That case was decided some four months after the decision in the present case was made by the court below.

The deed in question was not open to the other objections taken to it at the trial. One of those objections was that the deed was not substantially in the form prescribed by statute, or any equivalent form, and was void upon its face. The form is given in c. 50, sect. 22, of the General Laws of Wisconsin, of 1859; and the statute says that the deed "shall be substantially in the following or other equivalent form." There is no doubt that the form must be substantially pursued, or the deed will be invalid. Part of the form is a recital that the purchaser or his assignee has deposited a certificate, whereby it appears that certain lands, describing them, were, for the non-payment of taxes, sold by the officer named, at public auction, at a place and time named, to the said purchaser, for a sum named, "in the whole, which sum was the amount of taxes assessed and due and unpaid" on said tracts of land, &c. The deed in the present case recites that "S. A. Coleman, assignee of Oconto County," has deposited five certificates, whereby it appears that five certain parcels of land, describing them, three containing 40 acres each, each sold for $2.43, one containing $39\frac{58}{100}$ acres, sold for $2.43, and one containing 40 acres, sold for $2.48, were, for the non-payment of taxes, sold by the officer named, at public auction, at a place and time named, "to the said Oconto County, and by its treasurer assigned to S. A. Coleman, for the sum of twelve dollars and twenty cents, in

the whole, which sum was the amount of taxes assessed and due and unpaid" on said tracts of land, &c. The objection made is, that the recital is not that the lands were sold for so much in the whole, but that they were sold "to the said Oconto County, and by its treasurer assigned to S. A. Coleman" for so much in the whole; that the words, "the sum of," in the recital, relate to the word "assigned"; that the meaning is, that the lands were assigned to Coleman for the $12.20 in the whole, or were sold and assigned for that sum in the whole, and not that they were sold for that sum in the whole. The Circuit Court held that it clearly enough appeared, taking the whole deed together, for what sum in dollars and cents the land was sold in the whole, as required by the statute; and that, taking the statement as to the $12.20 with the preceding statement as to the sum for which each parcel of land sold, the inference was irresistible that the $12.20 was the amount for which the land was sold in the whole, for the non-payment of taxes. We think this view was correct. A like construction was given to a recital in the same language, by the Supreme Court of Wisconsin, in *Milledge* v. *Coleman, ubi supra.* It is manifest that the words, "and by its treasurer assigned to S. A. Coleman," are to be read as if they were in a parenthesis. In connection with the prior words, "Whereas S. A. Coleman, assignee of Oconto County, has deposited," &c., they are put in to indicate that Oconto County was the purchaser, and Coleman was its assignee, of the purchase, by assignment from the treasurer of the county. Eevrything required by the statute as to form is found in the deed, with added facts as to the assignment.

The objection as to the form of the acknowledgment of the deed does not seem to be insisted on by the defendant in error. We think the Circuit Court was correct in its ruling that the acknowledgment was in proper form. The same form was upheld as proper by the Supreme Court of Wisconsin, in *Milledge* v. *Coleman, ubi supra.*

The defendant offered in evidence at the trial a copy of a judgment in an action in the Circuit Court for the county of Menominee, Michigan, in which the Kirby Carpenter Company "was plaintiff and the Menominee River Manufacturing

Company, Charles J. Ellis and Millard F. Powers, were defendants, in which action a writ of replevin was issued to the sheriff of said county, commanding him to forthwith take into his custody the goods and chattels therein mentioned, which were the logs in controversy, and deliver them to said Kirby Carpenter Company, which action was commenced on the thirty-first day of May, 1876, and process therein served on said parties therein named as defendants on said day, and in which action judgment was entered as by default against the defendants therein named, on the twenty-fourth day of September, 1878, adjudging the title to said logs to be in said Kirby Carpenter Company." The plaintiffs objected to the admission of said record in evidence, as incompetent and immaterial, "because neither of the plaintiffs in this action was a party to said action." The court reserved its ruling upon said objection, and received said testimony subject to said objection. The record does not show that the objection was afterwards either overruled or sustained. As the court held that Coleman acquired no title under the tax deed, it was unnecessary for it to make any ruling as to the effect of the judgment in the replevin suit. But, under the stipulation so made in this court, the question is here to be passed upon.

The bill of exceptions states that the defendant showed that the Millard F. Powers named as one of the defendants in said replevin suit was the under sheriff of Oconto County; that process in said suit was served on said Powers on an island in the Menominee River, near its mouth, on the Michigan side of the main channel of said river, near the head of which island are situated what are called the dividing piers; and that at the time of the service of said process upon said Powers he was on said island assisting the plaintiff Geekie in his endeavors to retain said logs under said writ of attachment under which they were levied on by said Powers; that all of said logs that were taken from said plaintiffs, after the issuing of said writ of replevin, were taken by said sheriff and his posse, acting under the authority of said writ; that not to exceed twenty of said logs came to the possession of said defendant before the issuing of said writ of replevin; and that the point in said Menominee River at which said dividing piers are located, and at which

said defendant took from said Geekie said logs, was on the Michigan side of the main channel of said river.

The bill of exceptions states that the plaintiffs showed that Geekie, by and through Powers, his under sheriff, levied on said logs on April 24, 1876, in the Menominee River about one mile above said piers; that the piers were managed and controlled by the Menominee River Manufacturing Company, a corporation; that Powers, after making the levy, remained in charge of the logs for some days, and then turned the writ over to Geekie, the sheriff, on or about May 9, 1876, it not being shown on the trial that the defendant had notice of that fact; that the defendant claimed to own said logs and sought to take them from the custody of said sheriff, as they passed through said dividing piers; that from the time they commenced running through said piers until they had all passed through, said Geekie, and others acting for and under him, and parties acting for and under the direction of the defendant, were struggling with each other for the possession of the logs; that the Menominee River runs between the States of Michigan and Wisconsin; that when said logs were levied upon by said sheriff they were in a bend in said river and on the Wisconsin side of the channel; and that the expense of executing said writ of attachment by said sheriff, if he had not been interfered with by said defendant, would have been not more than $240.

The questions and answers forming the so-called special verdict were as follows: " 1st. Did the defendant take, or cause to be taken, from the possession of the plaintiffs, and convert to its own use, the logs in question, or any part thereof? Answer. Yes. 2d. If you answer the preceding question in the affirmative, then when were said logs so taken from the possession of the plaintiffs? Answer. On the twenty-fourth day of April, 1876. 3d. What quantity of logs, if any, were so taken and converted to its own use by the defendant? Answer. 1,040,238 feet. 4th. What was the value of the logs so taken and appropriated by the defendant? Answer. Six dollars per thousand feet. . . . 6th. What was the amount of expenses necessarily incurred and paid by the plaintiff Geekie in endeavoring to retain possession of said logs? Answer. $538.14. 7th. What number of days was the plaintiff Geekie necessa-

rily engaged in endeavoring to keep possession of said logs, and what was the value of his services per day? Answer. Forty-nine days, at three dollars per day, $147.00. 8th. What number of days was M. F. Powers necessarily engaged in attempting to keep possession of said logs, and what was the value of his services per day? Answer. Fifteen days, at three dollars per day, $45.00."

It is contended for the defendant in error that Geekie was concluded by the judgment in the replevin suit, and that, although he was not a party to it, the judgment against Powers, his under sheriff, bound him. But it clearly appears from the foregoing facts that Powers did not have possession of the logs when the replevin suit was commenced, and that Geekie did. Powers was sued as an individual. Geekie was not served with process in the suit, nor did he appear in it or defend it; and, so far as appears, no defence was made to it.

It is further contended for the defendant in error that the conversion by the defendant took place in Michigan, and not in Wisconsin, as alleged in the complaint, because it is shown that the place where the defendant took the logs from Geekie was on the Michigan side of the main channel of the river. This is not equivalent to a finding that the taking was wholly or exclusively in Michigan, so as to make, as against Geekie, a taking at a place where the lien of the attachment did not exist. It is contended that the Menominee River being, as found, the boundary between Michigan and Wisconsin at the *locus in quo*, Wisconsin has, by sect. 3 of the act of Congress of Aug. 6, 1846, c. 89, concurrent jurisdiction with Michigan over the waters of the Menominee River. But it is not necessary to determine this question.

Klass having the general property in the logs, and Geekie a special property in them, and the logs having been taken by the defendant from the possession of Geekie, who held them as sheriff, under the attachment against Klass, it was proper for both to join in the suit. The damages found to have been sustained by each may be added together and awarded to them as plaintiffs. The damages to Klass are the value of the logs, 1,040,238 feet at $6 per thousand feet, being $6,241.42. The damages to Geekie are the $538.14 expenses, less the $240, be-

ing $298.14, extra expenses, and the $147 and the $45. The sum of the whole to Klass and Geekie is $6,731.56. The date of the conversion, found by the jury, was April 24, 1876. There appears to be some confusion in the record. It is stated that the replevin suit was commenced May 31, 1876; that all of the logs which were taken from the plaintiffs after the issuing of the writ of replevin were taken by the sheriff under that writ; and that not to exceed twenty of such logs came to the possession of the defendant before the issuing of said writ. Yet the jury found that the defendant took all the logs or caused them to be taken from the possession of the plaintiffs, and converted them to its own use, on the 24th of April, 1876. But the attachment levy was made on the 24th of April by Powers, and the record states that he remained in charge of the logs for some days, and turned the writ over to Geekie on May 9. The bill of exceptions states, however, that there was other evidence tending to show the time of the conversion of the logs by the defendant, and the manner in which the defendant and the sheriff of Menominee County took possession of them. On the whole, we think, that as to the damages to Klass interest should be given from the 24th of April, 1876, the date of conversion found by the jury, and as to those to Geekie, interest should be given from the bringing of this suit, Nov. 21, 1876.

The judgment of the Circuit Court will be reversed with costs, and the case remanded to that court, with directions to it to enter a judgment for the plaintiffs for $6,731.56, with lawful interest on $6,241.42 thereof from April 24, 1876, and with lawful interest on $490.14 thereof from Nov. 21, 1876, with costs; and it is

*So ordered.*