## LAURA F. MORGAN v. SUSAN H. MORGAN ET AL.

### No. 26.

**1. Divorce in Another State—Jurisdiction.**—It is well settled that a judgment of divorce granted in another State or Territory can be collaterally attacked by showing that the court which granted it was without jurisdiction. Such divorce, where neither of the parties reside in the State granting it, is an absolute nullity.

**2. Void Divorce—Community Property—Rights of Second Wife.** A woman who marries a man holding a divorce. without knowing that such divorce is void, is entitled to a partnership or community interest in property jointly acquired during the time she lives with him as his wife, and she can assert her right thereto against the lawful wife and her children after the husband's death.

**3. Same.**—It would seem that the right of such second wife to a partnership interest in joint acquisitions might exist even though she knew her marriage was not legal.

APPEAL from Parker. Tried below before Hon. J. W. PATTERSON.

*John T. Harcourt,* for appellant.— 1. A woman who was deceived by a man, who represented himself as single, is entitled to all the rights of a legitimate wife. Clendenning v. Clendenning, 3 La. (N. S.), 438.

2. The civil and not the common law has been followed by our statute in relation to marital rights. Dallam, 101; Bradshaw v. Mayfield, 18 Texas, 29.

3. A wife de facto, who has by her toils contributed to the accumulation of the estate, is reasonably entitled to a share of the proceeds. Carroll v. Carroll, 20 Texas, 742.

*Nicholson & Robinson,* for appellee Susan H. Morgan.— 1. The court did not err in excluding the testimony of Laura F. Morgan, to the effect that she married John E. Morgan in good faith. Routh v. Routh, 57 Texas, 589.

2. The decree of divorce was granted by a court without jurisdiction, neither party having ever lived in Utah Territory. 21 Am. Dec., 751; Hall v. Ralph, U. S. S. C (lawyer's ed.), 271; Litowitch v. Litowitch, 27 Am. Rep., 148. The court must have jurisdiction of both parties. 11 Am. Rep., 437.

3. The decree of divorce was subject to be collaterally attacked. Norwood v. Cobb, 24 Texas, 551, 555; Hoffman v. Hoffman, 7 Am. Rep., 301; Eden v. Reel, 1 Am. Rep., 416, 417; Marx v. Fore, 11 Am. Rep., 435.

4. The marriage of John E. Morgan to Laura F. Cross was null and void. Sewall v. Sewall, 23 Am. Rep., 399; People v. Dowell, 12 Am. Rep., 260; Cartwright v. McGowan, 12 N. E. Rep., 738; 2 Kent's Com., 79; Routh v. Routh, 57 Texas, 594; Rice v. Randlett, 6 N. E. Rep., 594.

5. The second marriage was void and bestowed no marital rights upon either party thereto. Gatherings v. Williams, 44 Am. Dec., 54, 55; Fenton v. Reed, 4 Am. Dec., 244.

HEAD, Associate Justice.—Appellee Susan H. Morgan and John E. Morgan were married in the State of Missouri in the year 1848, and removed to Parker County, in this State, in 1859, where they resided until the death of said John E. Morgan, in November, 1887. In 1870, however, they ceased to live together as husband and wife, and continued to live separately and apart from each other from that time. In 1876 the said John E. Morgan, after having been refused a divorce in this State, and without ever having become a citizen of Utah Territory, and without ever having acquired a domicile therein, obtained a decree of divorce from his said wife, in the Probate Court of Salt Lake County. In said last named suit for divorce the said Susan H. Morgan filed a plea to the jurisdiction of said court, she being at the time a citizen of this State, and never at any time having been in, or acquired a domicile in, said Utah Territory. After having obtained the Utah divorce as above set forth, in the fall of 1876 the said John E. Morgan and appellant, Laura F. Morgan, were married in Tarrant County in this State. At the time of this last marriage the said John E. Morgan owned 160 acres of land, which is a part of the property in controversy herein, and after such marriage he and appellant accumulated the remainder of the property in controversy, or at least a large part thereof. The cause was submitted in the court below to the jury upon special issues, and upon their verdict judgment was rendered declaring the Utah divorce to be a nullity, and adjudging all the property in controversy to the lawful wife, Susan H.

Morgan, and appellee W. B. Morgan, who was the only child of said John E., and from this judgment this appeal is prosecuted.

Appellant's seventh assignment of error calls in question the action of the court in admitting evidence as to the actual residence of J. E. Morgan in this State, for the purpose of attacking the decree of divorce rendered in Utah, the contention being that the judgment of a sister State or Territory can not be attacked collaterally. That such judgment can be collaterally attacked in this State by showing that the court which rendered it was without jurisdiction, is too well settled to require discussion. Chunn v. Gray, 51 Texas, 114; Redus v. Burnett, 59 Texas, 581; Norwood v. Cobb, 24 Texas, 554. We are also of opinion that the court did not err in holding the Utah divorce to be an absolute nullity. The verdict of the jury established that John E. Morgan was never at any time a citizen of Utah Territory, and never at any time, either before or after the granting of the decree, acquired a domicile therein. Without undertaking to discuss the reasons upon which the decisions are based, we think it will be found that an almost unbroken line of decisions in the different States establishes the invalidity of a decree of divorce where neither of the parties are domiciled in the country granting the decree. 2 Black on Judg., 927; 2 Freem. on Judg., 580.

The court below, proceeding upon the idea that if the Utah divorce was a nullity the second marriage of John E. Morgan would also be a nullity, and would deprive the appellant, Laura F. Morgan, of all interest in the property acquired while she was living with him under such marriage, refused to admit evidence that the said Laura F. entered into this marriage in good faith, believing that the said John E. Morgan had been legally divorced from his former wife; and also refused evidence that the said Laura F., by her prudent management and services, contributed to the acquisition of the property in question, believing herself to be a lawful wife; and in entering its decree adjudged that she was not entitled to any part of such property; and the correctness of this action of the court presents the most serious question for our consideration.

The status of property acquired by a man and woman living together as husband and wife without having been lawfully married has been the subject of doubt and litigation almost from the time Texas became an independent republic. At an early day it was settled that where a headright certificate was issued to a man thus situated, as the head of a family, the woman was entitled to a one-half interest therein, notwithstanding the man had a lawful wife and family in another State, and the woman knew this fact. In other words, the fact that the woman was living in open adultery with the man did not deprive her of the right to claim a community interest in the certificate granted in his name or to his heirs. Babb v. Carroll, 21 Texas, 766; Lewis v. Ames, 44 Texas, 345; Yates v. Houston, 3 Texas, 433.

But the direct question involved in this controversy, so far as we are aware, has never been authoritatively settled in this State, although frequent allusions have been made to it. In Carroll v. Carroll, 20 Texas, 743, Chief Justice Hemphill uses this language: "I have not considered the strong claim which the defendant, Susan, independently of her rights as a lawful wife, might have urged to a community share of the property. She was his wife de facto. By her labors and toils she contributed to the accumulation of the estate. At the time of their marriage they were in a state of indigence, their property not amounting to more than $150. Their gains were the result of their joint industry, thrift, and economy, and she is reasonably entitled to a share of the proceeds."

In Zimpelman v. Robb, 53 Texas, 283, the question was alluded to as not being necessary to be decided.

In Routh v. Routh, 57 Texas, 600, in the opinion adopted by the court the question is expressly waived as not being necessary for its decision, but in the separate opinion of Associate Justice Bonner, on page 602, he uses the following language: "I am of the opinion that under the facts and circumstances of this case Nancy Thompson, in right of her putative marriage with Jonathan Routh, was entitled to one-half of the property acquired during that marriage, in the nature of a partnership of acquests and gains. I am am further of the opinion, that only the remainder of the property of that marriage, or one-half of the whole, could constitute the net community property of Jonathan Routh and his legal wife, Elizabeth Routh, plaintiff below, and that all to which the latter should in any event be entitled would be one-fourth the whole or one-half the net community property of herself and Jonathan Routh;" and cites Clendenning v. Clendenning, 3 La. (N. S.), 438; Succession of Navarro, 24 La. Ann., 297; Harrington v. Barfield, 30 La. Ann., part 2, 1297; Gaines v. Hennen, 24 How., 553; Gaines v. New Orleans, 6 Wall., 642; Smith v. Smith, 1 Texas, 621; Lee v. Smith, 18 Texas, 141; Henderson v. Ryan, 27 Texas, 670.

It will thus be seen that the strong tendency of our judges in the past has been to hold that property acquired in this State, under our community laws, by a man and woman living together as husband and wife, should belong to them in equal shares, whether they were legally married or not. And why should this not be so, especially when they have attempted to enter into a marriage contract, and believed that they were lawfully husband and wife? In such cases, by attempting to enter into the marriage contract, they agreed, as far as they had the power to agree, that they would live together as husband and wife, and that all property that they might thereafter acquire should be community property, and belong to them in equal portions. Such is the meaning of the contract they attempted to make under our law. How, then, can it be said that the property acquired in pursuance of such a contract shall belong to one of

the parties more than the other? What right has the husband to all of the property, to the exclusion of the wife, or what right has the wife to all of the property, to the exclusion of the husband? Suppose a wife so situated should by her own exertions acquire property toward which the husband did not contribute anything, would it be contended that this property became his property? How, then, can it be that where the property is acquired by the joint labors of both, each in the eye of the law contributing one-half thereto, it shall belong only to the husband?

It will not do to refer to the decisions in common law States to sustain the proposition that the woman under such circumstances has no right to any part of the property so acquired. In those States, by entering into the marriage contract she understood that all the property they might acquire while living together should belong to the husband, but in this State she understood that their rights in the property they might accumulate should be equal.

If it be undertaken to sustain the view that the husband is entitled to everything, upon the ground that he has possession, or that the titles have been taken in his name, and that under the circumstances indicated the courts will not lend their aid to either party, but will leave them where it finds them in reference to their property rights, then why should the court lend its aid to recover from appellant the property alleged to be in her possession, especially the personal property?

If we undertake to apply to the parties in this case the principles of law applicable to persons engaged in an illegal contract, it would seem that under the decisions in this State, the appellant, Laura F. Morgan, would be entitled to one-half of the property made by the partnership of which she and John E. Morgan were the members. By the decision in De Leon v. Trevino, 49 Texas, 92, approved in Pfeuffer v. Maltby, 54 Texas, 461, and in Wegner Bros. v. Biering & Co., 65 Texas, 511, it seems to be established as the law of this State, that although the partnership may be engaged in an illegal traffic, yet when the contract has been executed without the aid of the court by the voluntary acts of the parties, the profit that is realized is not contaminated, and the partners can force a division thereof; and this seems also to be the view entertained by the Supreme Court of the United States. Brooks v. Martin, 2 Wall., 70; Bank v. Bank, 16 Wall., 483; McBlair v. Gibbs, 17 How., 232.

Applying these principles to the case at bar, if it be conceded that the relations of John E. Morgan and appellant were illegal, and that their contract to live together and divide the property they might accumulate would not sustain an action in behalf of either if brought thereon, still we believe it can not be said that after the contract has been voluntarily executed by both, and the property has been acquired, the courts will refuse to recognize their respective interests therein.

But the evidence excluded by the court, if admitted, would have made

a stronger case than the one we have considered. Appellant proposed to prove that she entered into the marriage contract with John E. Morgan in good faith, believing he had a legal divorce from his former wife, he having represented to her that this was the case. Her mistake then was one of fact. But even if it had been shown that she was apprised of all the circumstances of the divorce, while she may have been *charged* with a knowledge of the law that would render it a nullity, yet her mistake was one that almost any person not versed in the law would be liable to make. The court in Utah had declared it to be a legal divorce, and appellant, without any great degree of negligence, might have accepted this as conclusive, especially when its legality depended upon the ascertainment of facts which it was the duty of the court to ascertain before granting the decree. We are of the opinion, therefore, that if appellant in good faith believed that she was the lawful wife of John E. Morgan, she should not be deprived of her right to participate in the property acquired through their joint efforts, and that she should have been allowed to prove that fact, and that this issue should have been submitted to the jury.

Of course this would give appellant no right to any share in the property which John E. Morgan had at the time of his attempted marriage to her, whether such property be his separate property or the community property of him and his first wife. This by our statute would go to his lawful wife and child. Newland v. Holland, 45 Texas, 588. We are therefore relieved of the necessity of discussing the effect of the separation contract attempted to be entered into between John E. Morgan and his wife Susan H. Morgan. Should this become necessary in the further progress of this litigation, the law applicable to such contracts will be found very fully considered in Rains v. Wheeler, 76 Texas, 394; also alluded to in James v. James, 81 Texas, 378.

The action of the court in submitting this case upon special issues we think in compliance with our statutes (1 Sayles' Civil Statutes, art. 1333), and appellant's assignments of error challenging this practice are not well taken.

The description of the property and the answers of the jury to the special issues are so indefinite, and the changes that have occurred in the property since the trial of this cause in the court below are probably so extensive, that we think it is best to reverse and remand the cause for a new trial in accordance with this opinion, rather than to undertake to render here such judgment as the court below ought to have rendered; and it is so ordered.

*Reversed and remanded.*

Delivered November 15, 1892.