PARKER et al. v. PARKER.

(Circuit Court of Appeals, Fifth Circuit. April 15, 1915. Rehearing Denied May 28, 1915.)

No. 2654.

1. DIVORCE ⬩79—PROCESS—SUBSTITUTED SERVICE.
   In divorce proceedings, where the state is an interested party, constructive service is viewed strictly, and where there is no appearance every essential requisite of the statute for such service must affirmatively appear.
   [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 258–263; Dec. Dig. ⬩79.]

2. DIVORCE ⬩327—JURISDICTION—MATRIMONIAL DOMICILE.
   Where a husband deserted his wife in California, where they were married and had always lived subsequent to the marriage, moved to Missouri, where he established his domicile, and thereafter, without communicating with his wife or contributing anything to her support or the support of a child, obtained a divorce in Missouri on substituted service, the decree of divorce, even though valid in Missouri, was not entitled to full faith and credit in Texas, under the Constitution and laws of the United States, as the obligatory recognition of such a decree beyond the limits of the state depends upon whether there was jurisdiction of the matri-

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

monial relation, and the husband did not, under the circumstances, take the matrimonial domicile with him to Missouri.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 831–834; Dec. Dig. ⊛327.]

3. JUDGMENT ⊛818—FOREIGN JUDGMENTS—COLLATERAL ATTACK.

The record of a judgment in another state may be collaterally attacked, if the facts necessary to give the court jurisdiction did not actually exist.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1458–1481; Dec. Dig. ⊛818.]

4. EQUITY ⊛67—"LACHES"—NATURE AND ELEMENTS.

The doctrine of laches is based upon grounds of public policy, which requires for the peace of society the discouragement of stale claims, and laches is not, like limitations, a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced, and the application of the doctrine depends upon the circumstances of each case; the very gist of the doctrine being the failure or neglect to do something that by law the party is obliged or bound to do.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 191–196; Dec. Dig. ⊛67.

For other definitions, see Words and Phrases, First and Second Series, Laches.]

5. HUSBAND AND WIFE ⊛273—COMMUNITY PROPERTY—SEPARATION OF HUSBAND AND WIFE—LACHES.

Under the laws of Texas, a wife's long delay in asserting her rights after her husband deserted her, attempted to obtain a divorce, and remarried, did not bar her community property rights upon his death, as the rights of the husband and wife in the community are a continuing and inseparable quantity, and, while the husband's interest is active, the rights of the wife are merely inchoate and passive during the marital relation, and, the husband having the absolute right to the control and management of the property, no duty devolved upon her to assert her rights until his death.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. ⊛273.]

6. HUSBAND AND WIFE ⊛273—COMMUNITY PROPERTY—RIGHTS OF LAWFUL AND PUTATIVE WIVES.

Where a husband, after deserting his wife and obtaining a divorce invalid outside the state in which it was rendered, remarried, his first and lawful wife was entitled under the community property laws of Texas to one-half of all property acquired after his marriage to her, and prior to the remarriage, and to one-half of the property acquired after the remarriage remaining after the second wife's share of one-half had been carved out.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. ⊛273.]

Appeal from the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

Action by Barbara Parker against Leonard Cecil Parker and others. Decree for complainant, and defendants appeal. Reversed and remanded, with directions.

This is an appeal from the District Court of the United States for the Northern District of Texas from a decree in favor of appellee, which brings under review the validity of a decree obtained in a divorce proceeding in the state of Missouri 30 years ago, which was held void by the District Court: First, because no jurisdiction was acquired of the defendant, appellee here, by the statutory proceedings undertaken in Missouri; and, second, because no

jurisdiction was acquired by the Missouri court of the matrimonial domicile of the defendant, a citizen and resident of California. Consequently is involved the marital·status and equitable rights of the California spouse in the estate of the husband, who subsequently married another, moved to Texas, where he accumulated a large estate, and died, leaving the widow of the third or putative marriage and nine children surviving him. A brief statement of the material facts will assist, perhaps, in an intelligent apprehension of the important questions involved here:

Walter M. Parker,· whose estate this litigation concerns, lived originally in Missouri and first married in that state. We are informed from the record that his first matrimonial venture was unfortunate, and Julia Lee, the bride of his youth, left him early "in the voyage" to the solitudes of the "Moss Creek farm, in Carroll county, Mo." This venture, blissful or otherwise, was brief and certainly irrelevant to any issue in this case. Soon after the death of his first wife, history informs us, Walter M. Parker in 1871 removed to California, where he met and married Barbara Kraemer, complainant below, June 28, 1873, near Orange, Los Angeles county, Cal. He lived with her until December 12, 1877, when he exchanged his property in California for a Missouri farm, left his wife, then pregnant, to the care and maintenance of a destitute mother, and departed for Carroll county, Mo., avowedly to make it his future home and domicile. The motive for his departure, the manner and circumstances of his leaving, and their influence upon subsequent events become important, and will be discussed in the further consideration of the particular facts of the separation. Parker settled on his farm in Carroll county, Mo., but maintained an uninterrupted silence toward the wife in California, who on February 18, 1878, two months and six days after her alleged desertion, gave birth to Elnora Alice, the only child of said marriage. On March 4, 1879, Parker instituted a suit for divorce against Barbara, his wife, in Ray county, an adjoining county to Carroll, where he was, it appears, temporarily residing while engaged at farm work. The statutory ground alleged in his petition for divorce was "that the defendant, wholly disregarding her duties as the wife of the plaintiff, had absented herself without reasonable cause for the space of one year"; and furthermore, to support his petition, he swore "to his best knowledge and belief" that "there were no children born of said marriage," when as a matter of fact the child of the California wife was then a year and three months old. An order for service by publication was accordingly made upon Parker's affidavit. In the due course of procedure, on the attempted compliance with the requirements of the Missouri statutes in such cases, a final decree by default passed against the California wife. This decree is attacked in the present suit, among other grounds, because the order of publication was not directed to the complainant, that the affidavit for published notice omitted to state the known residence of the defendant therein, and, further, that the Missouri court did not have jurisdiction of. the subject-matter of the suit, on the theory that complainant and appellee was the innocent party and was in fact deserted by the husband, and that in the particular circumstances of the case the matrimonial domicile was never transferred to Ray county, Mo. Subsequently to this divorce he married Mattie Parker, one of the defendants herein, in Iowa, in the year 1880 (March 17th), and after two years spent on the Carroll county farm removed with his wife Mattie to Wichita county, Tex., where the bulk of his estate was accumulated, and where Parker died May 14, 1908.

The complainant, Barbara Parker, first learned indirectly of her husband's divorce proceeding about 2 years after her desertion on December 12, 1877, when she caused an investigation to be made of the records of the circuit court in Carroll county, Mo., the known residence of Parker, but without confirmation of the report. Barbara Parker, about 30 years after the Missouri divorce, brought her bill in the United States District Court for the Northern District of Texas against the appellants, Mattie Parker, the putative widow, and Leonard Cecil Parker, executors, and the children of the putative marriage, charging that the decree of divorce obtained in Missouri was fraudulent and void ab initio; that Parker in truth and in fact deserted complainant and left her under the pretense that he would locate somewhere and send for her; that the grounds alleged in his petition for divorce were wholly false; that

complainant was never a resident of Missouri, and never had any notice of the divorce proceeding of Parker against her, and was totally ignorant of the Missouri proceedings and decree until after Parker's death, which occurred in Wichita county, Tex., on May 14, 1908. The bill further discloses that Parker left a last will and testament, dated March 12, 1908, in which Mattie Parker, the widow, and Leonard Cecil Parker, defendants, were named executors, devising the property to Mattie Parker and the children, share and share alike, and in which also is a bequest "to Elnora Alice Parker, daughter of my first wife Barbara of Anaheim, Orange county, California," etc. The complainant's bill also prays for a discovery and partition of the property, and that complainant be awarded one undivided half interest in all of the estate of Walter M. Parker, deceased, estimated at about $400,000. Mattie Parker, one of the defendants, waived her rights under the will and elected to take her interest under the laws of Texas relating to community property, and jointly answered with the defendant children of the last marriage, denying the material allegations of the bill.

In due course the cause came on to final hearing upon the pleadings and proofs, and the District Court found that Walter M. Parker willfully deserted Barbara Parker, at Anaheim, Cal., in an advanced state of pregnancy, with Elnora Alice, the first child, December 12, 1877; that Parker did not carry with him to Carroll county or to Ray county, Mo., the matrimonial domicile of himself and complainant, and that the latter was never either actually or constructively within the territorial limits of the state of Missouri; that the grounds alleged for divorce were false; that the affidavit as a basis for the order for substituted service was insufficient, and failed to meet the statutory requirements for such service; that the notice contained in such order was not addressed or directed to the nonresident defendant, as required by the statute; and that consequently the proceedings had in Ray county circuit court, and the judgments nisi and final attempted to be rendered therein, were null and void. A final decree followed in favor of the complainant below, awarding her an equal undivided one-half interest in all the property of which the said Walter M. Parker died seised and possessed. This decree is complained of because, as asserted, the District Court erred in its several findings enumerated, and further because the award of an undivided half interest in the estate was excessive.

Theodore Mack and Mike E. Smith, both of Ft. Worth, Tex., and J. Shirley Cook, of Vernon, Tex., for appellants.

S. B. Cantey, of Ft. Worth, Tex., Francis Marion Etheridge, Joseph Manson McCormick, and Henri Louie Bromberg, all of Dallas, Tex., for appellee.

Before PARDEE and WALKER, Circuit Judges, and SHEPPARD, District Judge.

SHEPPARD, District Judge (after stating the facts as above). Whether there was jurisdiction of the defendant acquired by the statutory proceedings in Ray county, Mo., as would affect a binding operative decree against the defendant in that state, we prefer to express no opinion, as it is unnecessary in view of the conclusion reached on the findings of fact by the chancellor. In the view we take of the case, the paramount question submitted for determination by this court is: Was there jurisdiction of the matrimonial res, or the subject-matter of the controversy, as would compel recognition of the decree in the state of Texas under the full faith and credit clause of the Constitution and laws of the United States?

[1] Assuming, but not deciding, jurisdiction in the Missouri court on the statutory proceedings for divorce instituted by Parker in Ray

county, Mo., whether or not the decree is entitled to full faith and credit beyond the territorial limits of the state of Missouri depends, it would seem, upon more than mere conformity with the requirements of the statutes of that state for substituted service. Of course, if an essential requisite of the statute for valid service was omitted in the jurisdictional proceedings, it is generally held that the decree based thereon is not merely voidable, but void, and subject to collateral attack. In divorce proceedings, particularly where the state is a silent, but interested, party, constructive service is viewed strictly, and where there is no appearance every essential requisite of the statute for such service must affirmatively appear. Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959; Kunzi v. Hickman, 243 Mo. 103, 147 S. W. 1002; Shrader v. Shrader, 36 Fla. 502, 18 South. 672.

It is not incumbent upon this court, however, in face of the findings of fact by the court below, supported as we believe by the evidence, to determine the validity of the decree rendered in the state of Missouri. The recognition of the decree in such cases beyond the limits of the state where granted, it is well settled, depends ultimately upon the jurisdiction of the subject-matter of the particular action. Extraterritorial recognition of divorce decrees, predicated on statutory proceedings for substituted service, depends, as we shall see, on whether or not there was jurisdiction over the matrimonial domicile in the state where granted.

[2] Adverting to the record for the facts to determine this ground of jurisdiction, we have the District Court's findings on a conflict in the testimony, supported as we think by a preponderance of the evidence that the complainant, Barbara Parker, went to California from Illinois November 8, 1867, and had never been out of the state of her adoption; that she was lawfully married to Parker in said state on June 28, 1873, from which time they lived together until December 12, 1877, when he deserted complainant, leaving her pregnant and destitute at the home of her impoverished mother; that the father never afterward saw the mother or child, and never communicated with them or contributed anything to the support of either. Ascertaining, moreover, from the evidence the motive and reasons for his desertion of the complainant, the chancellor summarizes the proof fairly borne out by the record:

"That Walter M. Parker did not take the matrimonial domicile of himself and complainant to the state of Missouri, and the complainant was never actually or constructively within the territorial limits of that state."

It seems well settled by federal authority that, when the wife is deserted by the husband without justification, the matrimonial domicile stays with her, the innocent party, and that she may in consequence acquire a new domicile, which may become, indeed, the matrimonial domicile, as was held in Barber v. Barber, 21 How. 582, 16 L. Ed. 226, and Haddock v. Haddock, 201 U. S. 570, text, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1. The Court of Civil Appeals of Texas, in the case of Montmorency v. Montmorency, 139 S. W. 1171, text, referring to the Haddock Case, says:

"The decision impresses us with the belief that the reasoning of that decision gives the court of the domicile of the innocent party jurisdiction to render a judgment binding everywhere, and deprives the court of the domicile of the guilty party of jurisdiction to render a judgment binding save in the state where rendered." Cheever v. Wilson, 9 Wall. 108, 19 L. Ed. 604; Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794.

[5] The record of judgment in another state may be collaterally attacked, if the facts necessary to give the court jurisdiction may be successfully contradicted. If the facts supporting jurisdiction did not actually exist, the record of the judgment may be impeached. Thompson v. Whitman, 18 Wall. 457, 21 L. Ed. 897; Morgan v. Morgan, 1 Tex. Civ. App. 315, 21 S. W. 154; Stuart v. Cole, 42 Tex. Civ. App. 478, 92 S. W. 1040. This is true, notwithstanding the decree may be valid and conclusive in the state where granted. Parker, having acquired a bona fide domicile in Missouri, would be entitled to have his status adjudicated in that state, as held in Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654:

"All governments possess inherent power over the marriage relation, its formation, and its dissolution as regards their own citizens; and where a court or a Legislature of a state has acted conformably with its laws concerning the marriage tie as to a citizen of that state, its action is binding in that state as to that citizen, and its validity under the due process clause of the Constitution may not be therein questioned."

And in Haddock v. Haddock, supra:

"As a corollary to the power of the state, irrespective of any extraterritorial effect, any other sovereign may, under the principles of comity, give to such a decree the efficacy which its own conception of duty and public policy may justify." Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565.

The obligatory recognition of such a decree beyond the limits of the state depends, however, upon whether there was jurisdiction of the matrimonial relation of the parties. That relation may not follow the domicile of the offending husband. If the adopted residence is intended to perpetrate a fraud on the innocent wife, or if the wife is without fault, and was deserted, the matrimonial domicile remains in the state of her residence. The law is well settled on this subject in Barber v. Barber, supra, that:

"Where the domicile of matrimony is in a particular state, and the husband, abandoning the wife, wrongfully goes into another state in order to avoid his marital obligation, such other state does not become a new domicile of matrimony, nor the actual or constructive domicile of the wife. That [the matrimonial domicile and that of the wife] continues in the original state until she actually acquires a new one."

In the Atherton Case, supra, it was held by the Supreme Court that a decree obtained in Kentucky against a wife resident in New York with the consent of her husband was entitled to full faith and credit in the jurisdiction of New York, because from the facts of that case it was ascertained that the matrimonial domicile was in Kentucky, notwithstanding the residence of the wife in Clinton, N. Y. In that case there was constructive service on the wife, and it was there held that, where the statute providing for substituted service was complied with in the state of the matrimonial domicile, jurisdiction would be complete. The distinguishing facts of that case from the instant case are that in

the Atherton Case the Kentucky court had jurisdiction of the matrimonial domicile as well as jurisdiction of the person of the defendant, and it would appear from the reasoning in that case that both are necessary to invest the decree with the character of compulsory extraterritorial recognition under the full faith and credit clause of the federal Constitution.

In the case of Haddock v. Haddock, 201 U. S'. 572, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, which we think is decisive of the question here presented, the husband abandoned the wife in New York and went to Connecticut where he acquired a domicile in good faith; the facts made out a case of desertion. The husband brought suit for divorce in Connecticut and perfected constructive service in accordance with the Connecticut statute; a final decree was entered on substituted service alone. The court held that the decree so obtained probably could be enforced within the jurisdiction of Connecticut, and that the state of New York could give it such effect as its public policy required, but that the decree based upon constructive service, and without personal jurisdiction over the respondent, was not such a decree as was entitled to obligatory enforcement in other states in virtue of the full faith and credit clause of the Constitution of the United States.

Coming next to the force and effect of the decree in Texas: The public policy of that state, settled by decisions of its ultimate courts, would, it seems, recognize only such decrees granted in other states where jurisdiction was predicated on the matrimonial res, as was held in the well-considered opinion of Montmorency v. Montmorency, supra; Griffin v. Griffin, 54 Tex. Civ. App. 619, 117 S. W. 910. It results, therefore, that the decree rendered by the District Court in the case at bar is not repugnant to the public policy of Texas as announced by the appellate courts of that state.

[4] Having determined, then, that the complainant's rights to a share in the estate of Walter Parker were not foreclosed by the decree of the Missouri court, the next question to be considered is what interest she is entitled to by the law of Texas, where the community system obtains, and whether or not her inertia and indifference, long after indirect notice of her husband's marriage in Missouri and her efforts to obtain confirmation of the report, would invoke the rule of laches to the extent of barring her recovery?

The doctrine of laches is based upon grounds of public policy, which requires for the peace of society the discouragement of stale claims. Mackall v. Casilear, 137 U. S. 556, 11 Sup. Ct. 178, 34 L. Ed. 776; Lansdale v. Smith, 106 U. S. 386, 1 Sup. Ct. 350, 27 L. Ed. 219. Laches is not, like the statute of limitations, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced. Brown v. County of Buena Vista, 95 U. S. 157, 24 L. Ed. 422. The application by the court, however, of the doctrine of laches, depends upon the circumstances of each case; for the very gist of the doctrine is that failure or neglect to do something that by law the party is obliged or bound to do.

[5] As we understand the law governing rights in community property, there was no duty devolved upon complainant to assert her equi-

table rights in the estate until the death of her husband, since during the marriage relation, where the community system exists, the husband has the absolute right to the control and management of that property. The rights of each the husband and the wife in the community are a continuing and inseparable quantity. Holyoke v. Jackson, 3 Wash. T. 235, 3 Pac. 841. But as to the nature of these rights it is settled that, while the husband's interest is active, the rights of the wife are merely inchoate and passive, during the marital relation. Wright v. Hays, 10 Tex. 130, 60 Am. Dec. 200; Higgins v. Johnson, 20 Tex. 389, 70 Am. Dec. 394; Spreckels v. Spreckels, 116 Cal. 339, 48 Pac. 228, 36 L. R. A. 497, 58 Am. St. Rep. 170. It was said in Routh v. Routh, 57 Tex. 589, text 595:

"The law of our state then impresses upon the marriage relation inflexible and continuous durability. * * * We have adopted this civil-law rule as it applies to the marital relation, ingrafting it upon our common-law contract of marriage, which, as we have shown, recognizes no second contract, * * * nor conjugal relation with other persons, during the continuance of the lawful marriage, unless the relation is lawfully dissolved."

It is declared in the same decision that to the marriage there attaches as a sequence a continued right of the wife to an equal interest in the community property until that right in some mode recognized by law be forfeited.

[6] Having determined, therefore, that the complainant is entitled to share in the estate of Walter M. Parker, we now turn to ascertain what may be her interest in his accumulations under the community system before and after the putative marriage with Mattie Parker, the appellant.

Appellee contends for the application of the rule which it is claimed was followed in Patton v. Philadelphia, 1 La. Ann. 98, where it was held, in a contest between the lawful and putative wives, that they were entitled to divide the community estate to the exclusion of heirs. It is insisted that the Routh Case, supra, approves the doctrine there stated, and that it should control in a case like the present. We do not understand the views so expressed in that case to adopt the doctrine of the Patton Case, supra. Adverting to the Patton Case, the court said that:

"One-half of the acquêts and gains will go to each wife; that such half is a debt due to each wife by the husband, and his heirs can claim nothing until his debts are paid."

But, looking further to the decision of the court in the Routh Case, it will be seen that it neither approves of nor accepts the statement above as the rule for distribution, but expressly holds:

"The Supreme Court has thus far shown a willingness to pretermit, in advance of the necessity demanding it, the expression of an opinion as to what circumstances will be sufficient to deprive a wife living apart from her husband of her community interest in property acquired by him in this state after their separation." 57 Tex. text 598–599.

And again:

"It is not necessary to attempt to suggest what rule would most nearly conform to an equitable one, and be most consistent with the rights of parties under our laws, nor shall we make such effort." 57 Tex. text 601.

222 F.—13

Mr. Justice Bonner, however, concurring with the court mainly on the legal questions necessary to a decision of the case, thought it expedient to express some opinion on the distribution of the estate which the Court had expressly waived, saying:

"I am of the opinion that, under the facts and circumstances of this case, N. T., in right of her putative marriage with Jonathan Routh, was entitled to one-half of the property acquired during that marriage in the nature of a partnership of acquêts and gains." "I am further of the opinion that only the remainder of the property of that marriage, or one-half of the whole, could constitute the net community property of Jonathan Routh and his legal wife, Elizabeth Routh, plaintiff below, and that all to which the latter should in any event be entitled would be one-fourth the whole, or one-half the net community property of herself and Jonathan Routh." Clendenning v. Clendenning, 3 Mart. (La. N. S.) 438; Succession of Navarro, 24 La. Ann. 298; Harrington v. Barfield, 30 La. Ann. part 2, 1297; Gaines v. Hennen, 24 How. 553, 16 L. Ed. 770; Gaines v. New Orleans, 6 Wall. 642, 18 L. Ed. 950; Smith v. Smith, 1 Tex. 621, 46 Am. Dec. 121; Lee v. Smith, 18 Tex. 141; Henderson v. Ryan, 27 Tex. 670, cited.

If this separate opinion may be criticized as dicta, it is nevertheless supported by sound reasoning, based on the eternal principles of equity, and is followed approvingly in Morgan v. Morgan, 1 Tex. Civ. App. 315, 21 S. W. 154.

In the Morgan Case, supra, the bona fide wife sued for all the estate of which the husband had died seised and possessed, and recovered on the theory that, as there had been no divorce from the first marriage, the second marriage was void ipso facto, and that no community interest whatever inured to the putative wife of such a marriage. The appellate court rejected this theory, sustaining the equitable right of the putative wife, and on the subject of distribution quoted the separate opinion of Judge Bonner above referred to in full.

If, therefore, under the law as we find it, the rights under the putative relation begin only from the time of the de facto marriage, a fortiorari the prior accumulations would necessarily inure to the wife of the first or subsisting marriage.

It is our opinion that the facts of this case evolve two distinct estates. The first consists in the acquêts of Walter M. Parker prior to the putative marriage with Mattie Parker, and out of this estate complainant is entitled to an undivided one-half or community interest, and the residue would go to the heirs of that marriage.

The defendant Mattie Parker's interest in the property is limited to a community interest in the accumulations or the estate acquired after her attempted marriage with decedent, or to that estate which by her joint labor and sacrifice she contributed. Morgan v. Morgan, supra, approved in Hammond v. Hammond, 49 Tex. Civ. App. 482, 108 S. W. 1024, where the property was divided equally between the wives, no rights of children intervening.

Undoubtedly, by the settled law of Texas, Mattie Parker, the wronged spouse, is entitled to a free and unincumbered half of the property acquired by decedent after his marriage to her, March 17, 1880. Notwithstanding the fact that the property acquired after the putative marriage was due solely to the joint efforts of the parties to that marriage, yet by reason of there never having been a legal dissolution of the

prior legal marriage the law stamps it irrevocably with the community rights of Barbara Parker, the deserted spouse. Her rights, however, are relegated to the just and equitable claim of the putative wife. The remaining half of the second estate would, it follows, be divided between Barbara Parker and the children of the putative marriage.

We conclude, therefore, that the complainant is entitled to recover in this action one undivided half of the first estate, or the original acquêts of Walter M. Parker as it existed before the putative marriage; the remaining half of which to go to the heirs of that marriage. Of the second estate, the property acquired after the putative marriage, complainant is entitled to one-fourth of the whole second estate, or one-half of that remaining after Mattie Parker's share of one-half of the whole has been carved out; the residue of this second estate to go to the heirs of that marriage.

The decree of the District Court is therefore reversed, and the cause remanded, with directions to reform and enter therein a decree in conformity with the views here expressed.

It is so ordered.